**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 14a0349n.06

Case No. 13-1671

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
*May 01, 2014*
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| GLORIA-MARIA DARDINI, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| WILLIAM DARDINI, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| Third-Party Defendant-Appellant, | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| v. | ) | MICHIGAN |
| | ) | |
| CHASE A/K/A CHASE HOME LENDING; | ) | |
| FEDERAL HOME LOAN MORTGAGE | ) | |
| CORPORATION, A/K/A/ FREDDIE MAC; | ) | |
| and TROTT & TROTT, PC, jointly and | ) | |
| severally, | ) | |
| | ) | |
| Defendants-Appellees. | ) | |

BEFORE: MERRITT, COOK, and DONALD, Circuit Judges.

COOK, Circuit Judge. William and Gloria-Maria Dardini, husband and wife, seek to set aside the foreclosure of their home, challenging the mortgage as void because Mrs. Dardini never signed it. The district court granted summary judgment to the lender-defendants, holding that the equitable purchase-money-mortgage doctrine automatically encumbered the title to the Dardinis' property. Discerning no error, we affirm.

I.

The Dardinis purchased their home in St. Clair Shores, Michigan, in 2000, taking title to the deed as tenants by the entirety, and securing the loan used to pay for the property with a mortgage in favor of Mortgage 1, Inc. Though both Dardinis attended the closing and executed a Settlement Statement acknowledging buying the home and the mortgage lien, only Mr. Dardini signed the mortgage agreement itself.

JPMorgan Chase Bank, N.A. ("Chase") held the mortgage in 2009 following a series of assignments. After the Dardinis defaulted in 2010, Trott & Trott arranged the property's sale at a sheriff's auction where the Federal Home Loan Mortgage Corporation ("Freddie Mac") purchased it under a sheriff's deed. The Dardinis failed to redeem within the statutorily-allotted six months, and Freddie Mac filed an eviction proceeding in Michigan state court against Mr. Dardini and all other occupants of the property. Mrs. Dardini consented as an occupant to entry of a judgment of possession, and the court entered default judgment against Mr. Dardini for failure to appear at trial.

In April 2012, after the court ordered them to vacate, Mrs. Dardini filed this lawsuit, seeking to set aside the sheriff's deed because the mortgage was void *ab initio*, as she never executed it.[1] Freddie Mac removed the case to the district court, counterclaimed against Mrs. Dardini, and filed a third-party complaint against Mr. Dardini, seeking, *inter alia*, adjudication of the validity and priority of the mortgage under the purchase-money-mortgage doctrine. Upon consideration of cross-motions for summary judgment, the district court granted judgment to Chase, Freddie Mac, and Trott & Trott on multiple grounds, including the purchase-money-mortgage doctrine. The Dardinis appeal.

---

[1]The complaint asserts other causes of action, but, other than the claims against Trott & Trott, the Dardinis decline to appeal the district court's dismissal of these claims.

II.

We review the grant of summary judgment de novo. *Kalich v. AT&T Mobility, LLC*, 679 F.3d 464, 469 (6th Cir. 2012). A court may grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must draw all reasonable inferences from the record in the light most favorable to the non-moving party and may only grant summary judgment "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

The Dardinis' argument rests on the black-letter-law principle that, "when a husband and wife choose to hold property by the entirety, neither spouse may individually . . . encumber . . . property without the consent of the other spouse." *Canjar v. Cole*, 770 N.W.2d 449, 454 (Mich. Ct. App. 2009) (per curiam) (citing *Rogers v. Rogers*, 356 N.W.2d 288, 292–93 (Mich. Ct. App. 1984)). Because Mrs. Dardini never signed the mortgage, the Dardinis insist that the note and mortgage cannot validly encumber this property held as tenants by the entirety. The Dardinis reason that without both spouses agreeing to the mortgage, entireties law—which insulates non-consenting spouses from enforcement against them of financial obligations incurred solely by the other spouse—means that they took the property unencumbered, preventing Chase and Trott & Trott from foreclosing on it as a matter of law. Chase and Freddie Mac (collectively, the "Bank") offer a number of arguments supporting the mortgage's validity, but we need consider only one to affirm: whether the equitable purchase-money-mortgage doctrine validates the mortgage, regardless of the missing signature.

The Michigan Supreme Court defines a purchase-money mortgage as "[a] mortgage . . . taken back to secure the performance of an obligation incurred in the purchase of the property." *Graves v. Am. Acceptance Mortg. Corp.*, 677 N.W.2d 829, 833 (Mich. 2004) ("*Graves II*") (internal quotation marks omitted). As a consequence, "[o]ne who executes a purchase-money mortgage is not regarded as obtaining the title and then placing an [e]ncumbrance on it. He is deemed to take the title charged with the [e]ncumbrance, which has priority even over pre-existing claims." *Troyer v. Mundy*, 60 F.2d 818, 821 (8th Cir. 1932) (internal quotation marks omitted); *see also Fecteau v. Fries*, 234 N.W. 113, 114 (Mich. 1931) ("[I]f [a mortgagor] purchase[s] property and give[s] a mortgage for the purchase-money, the deed which he receives and the mortgage which he gives are regarded as one transaction.") Courts developed the purchase-money-mortgage doctrine to protect lenders because:

> [T]hird party lending is the dominant source of purchase money land financing in this country, [and so] a rule which facilitates such lending is especially beneficial to the national real estate economy. Applying the rule to benefit third party lenders is plainly fair . . . [because] they . . . part with money with the expectation that they will have security in that real estate. Without this advance of money, the purchaser-mortgagor would never have received the property. . . .

Restatement (Third) of Property (Mortgages) § 7.2 (1997).

As properly found by the district court, the mortgage at issue here constitutes a purchase-money mortgage because Mr. Dardini borrowed the purchase price and pledged (mortgaged) the property "at the time of purchase . . . so as to constitute one transaction and the proceeds were used . . . to purchase the [property]." Consequently, the Dardinis acquired the property *already encumbered* by the mortgage, obviating any concern that Mr. Dardini mortgaged the land in violation of the tenancy-by-the-entirety limitation on single-spouse encumbrances. That Mrs. Dardini never signed the mortgage matters not under the purchase-money-mortgage doctrine—the encumbrance materialized without the voluntary act of either spouse. Moreover, this result

accords with this equitable doctrine's underlying rationale: The Dardinis would not have acquired their home without the funds loaned by Mortgage 1, and Mortgage 1 would not have loaned the funds without security.

The Michigan Supreme Court reached this precise conclusion in the venerable case of *Fournier v. Fournier*, 8 N.W. 100 (Mich. 1881). There, the husband borrowed funds secured by a mortgage "for the very purpose of enabling [him] to build [a] house, and that it was only by means of these advances that the house was built." *Id.* at 100. The wife, who had not signed the mortgage, challenged it as void. *Id.* The court rejected this argument, holding the mortgage enforceable against the wife as a matter of equity. *Id.* Numerous unpublished Michigan trial court decisions come to the same conclusion on materially identical facts. *See, e.g.*, *Nationstar Mortg., LLC v. Russell*, No. 11-121218-CH, at 11–12 (Oakland Cnty., Mich. Cir. Ct. Nov. 9, 2011); *Flagstar Bank, FSB v. Walbridge*, No. 2009-105268-CH, at 3–4 (Oakland Cnty., Mich. Cir. Ct. Dec. 17, 2010).

The Dardinis cite no authority rejecting the purchase-money-mortgage doctrine in this context. Instead, they cite inapt cases like *Townsend v. Chase Manhattan Mortgage Corp.*, 657 N.W.2d 741 (Mich. Ct. App. 2002). There a mother and son purchased property as joint tenants, but only the mother signed the mortgage. *Id.* at 742. The mother later died, and when the son defaulted on the loan, the mortgage-holder foreclosed. *Id.* The Michigan Court of Appeals reversed the trial court's grant of summary judgment to the mortgage-holder, concluding that "the mortgage was effectively terminated by [the mother's] death because her interest in the property was extinguished with her death." *Id.* at 744. As such, the son took the property unencumbered. *Id.* at 745. But given that Mr. Dardini granted the mortgage interest at stake here, and that interest survives as long as he survives, *Townsend* offers no aid to the Dardinis.

Further, the *Townsend* court refused to consider whether the purchase-money-mortgage doctrine applied in light of Michigan Supreme Court precedent calling the viability of the doctrine into question. *Id.* at 744 (citing *Graves v. Am. Acceptance Mortg. Corp.*, 652 N.W.2d 221 (Mich. 2002) ("*Graves I*")). But the Michigan Supreme Court later vacated *Graves I*, and thus "the purchase money mortgage doctrine remains intact in Michigan jurisprudence." *Graves II*, 677 N.W.2d at 836 (Weaver, J., concurring).

The other case the Dardinis point to,[2] *LaSalle Bank Midwest NA v. Abernathy*, No. 304111, 2012 WL 3046137 (Mich. Ct. App. July 26, 2012) (per curiam)—an unpublished case— likewise offers the Dardinis little support. Confronting substantially similar facts as those presented here, the *Abernathy* court relied on *Townsend* to hold that the trial court erred in reforming a mortgage to include the wife as a co-signer because "it is not clear that [she] intended to subject her interest in the property to the mortgage." *Id.* at *5. Importantly, however, no party asserted the purchase-money-mortgage doctrine, and thus the court rested its decision only on the doctrine of reformation. *See generally id.*

In sum, we conclude that, under the purchase-money-mortgage doctrine, the Dardinis acquired the property already encumbered by the (now-defaulted) mortgage, and so their tenancy-by-the-entireties argument cannot save them from foreclosure. Accordingly, as the Dardinis concede, their claims against Trott & Trott must also fail.

III.

For these reasons, we AFFIRM.

---

[2]The Dardinis also cite *BAC Home Loans Servicing, LP v. Thomas*, No. 309601, 2013 WL 4081156 (Mich. Ct. App. Aug. 13, 2013) (per curiam), but as pointed out by the Bank, *Thomas* actually supports the Bank's position, as that court applied the purchase-money-mortgage doctrine in a similar factual scenario. *Id.* at *3–5.