*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CINDY SCHAAF, COLLEEN M. FRYER, and
GWEN MASON,

        Plaintiffs/Counterdefendants-
        Appellees,

v

CHARLENE FORBES, also known as ANGIE
FORBES,

        Defendant/Counterplaintiff-
        Appellant.

FOR PUBLICATION
July 1, 2021
9:00 a.m.

No. 343630
Antrim Circuit Court
LC No. 2016-009008-CH

## ON REMAND

Before: TUKEL, P.J., and SERVITTO and RIORDAN, JJ.

SERVITTO, J.

        This case is again before us following an order by our Supreme Court which vacated our judgment in *Schaaf v Forbes*, unpublished opinion of the Court of Appeals, issued August, 6, 2019 (Docket No. 343630) (*Schaaf I*), and remanded the case with the directive that we first consider defendant's challenge regarding the circuit court's subject-matter jurisdiction before we consider any remaining legal issues. *Schaaf v Forbes*, ___ Mich ___; 949 NW2d 726 (2020). We now hold that the circuit court had subject-matter jurisdiction to hear and decide this case and, on the merits, we conclude that the circuit court properly held as a matter of law that a trust cannot hold and convey real property as a joint tenant with rights of survivorship. We also reject defendant's arguments that the circuit court abused its discretion in receiving and considering more than 300 pages of documentation that plaintiffs offered regarding the issue of contribution as the case proceeded, and conclude that the trial court properly ordered defendant to contribute to prior easement litigation expenses concerning the property. Accordingly, as we find no error in any of the trial court's rulings, we affirm its judgment.

## I. FACTS & PROCEDURAL HISTORY

        We previously summarized the pertinent facts as follows:

Mae Fitzpatrick and Leo Bussa, mother and son, jointly owned property on the west shoreline of Torch Lake, located in Milton Township, Michigan, and the associated littoral rights. In the 1980s and 1990s, a portion of the waterfront property was divided into seven separate parcels for residential development. Access to the seven lots was through the subject parcel by an easement on a private road, Bussa Lane. After the division, the remaining Bussa/Fitzpatrick property was an 80-acre northern parcel, which was sold in 2015, and a 60-acre southern parcel. Bussa Lane provided the only means of access to the latter parcel as well.

Fitzpatrick died in 2004, leaving Bussa as the trustee of the Fitzpatrick Trust. Bussa endeavored to restructure ownership of the subject 60-acre parcel by executing five conveyances. First, he, as trustee of the Bussa Trust, conveyed to himself, as an individual, the trust's half interest. He then conveyed that interest to himself, defendant, and plaintiffs Schaaf and Fryer, "as Joint Tenants with Rights of Survivorship," while retaining his own enhanced life estate.[1] This left the Fitzpatrick Trust retaining its half interest in the subject parcel as a tenant in common, and the other half, formerly that of the Bussa Trust, shared by Bussa personally, along with defendant and plaintiffs Schaaf and Fryer, as joint tenants with rights of survivorship.

Bussa then, as trustee of the Fitzpatrick Trust, simultaneously conveyed half of the latter trust's interest to himself as trustee of the Fitzpatrick Trust, and to plaintiff Mason, "as Joint Tenants with Rights of Survivorship," while retaining his own personal enhanced life estate, and the other half of that interest to himself, again as trustee of the Fitzpatrick Trust, and to defendant, and plaintiffs Schaaf and Fryer, "as Joint Tenants with Rights of Survivorship," while again retaining his own enhanced life estate.

Shortly before he died, Bussa commenced litigation relating to a proposed subdivision of the parcel and use of the Bussa Lane easement. The owners of the seven adjacent parcels objected to any increased burden on that easement, and they contested the litigation. Upon Bussa's death, the instant parties were substituted as plaintiffs in the case, who continued the litigation. That case ended in a ruling that acknowledged that the 60-acre parcel had the right to use the easement, but prohibited the further burdening of the easement by allowing additional owners or newly created parcels to use it.

Plaintiff Mason, as successor trustee of the Fitzpatrick Trust, drew up and filed deeds confirming the transfers from Bussa to the remaindermen. Plaintiffs contested the validity of the conveyances that purport to have the Fitzpatrick Trust as a joint tenant with rights of survivorship. The circuit court agreed that "a Trust cannot hold Property as a joint tenant with rights of survivorship," and thus that the Fitzpatrick Trust "had no authority to convey the Property as joint tenants with

---

[1] An enhanced life estate is "a life estate reserved in the grantor and enhanced by the grantor's reserved power to convey." Frank, *Ladybird Deeds*, Mich BJ 30, 30 (June, 2016).

rights of survivorship." The court voided the attendant conveyances, which left the interests in the Fitzpatrick Trust's half of the subject parcel to pass in accord with the terms of the trust itself. The circuit court recognized the resulting interests in the subject property as follows:

| | |
|---|---|
| Gwen Mason (Plaintiff) | An undivided one-half interest in a one-half undivided interest in the entire Parcel as a tenant in common with the other parties; |
| Cindy Schaaf (Plaintiff) | An undivided $16^2/_3$ percent interest in a one-half undivided interest in the entire Parcel as a tenant in common, and |
| | An undivided $^1/_3$ interest in a one-half undivided interest in the entire Parcel as a joint tenant with right of survivorship as to the other interests in that one-half; |
| Colleen Fryer (Plaintiff) | An undivided $16^2/_3$ percent interest in a one-half undivided interest in the entire Parcel as a tenant in common, and |
| | An undivided $^1/_3$ interest in a one-half undivided interest in the entire Parcel as a joint tenant with rights of survivorship as to the other interests in that one-half; |
| Charlene Forbes (Defendant) | An undivided $16^2/_3$ percent interest in a one-half undivided interest in the entire Parcel as a tenant in common, and |
| | An undivided $^1/_3$ interest in a one-half undivided interest in the entire Parcel as a joint tenant with rights of survivorship as to the other interests in that one-half. |

The court summarized the ownership situation as "an undivided one-half of the Parcel . . . held by the Parties as tenants in common" and "[t]he other undivided half . . . owned by Plaintiff Schaaf, Plaintiff Fryer and Defendant Forbes as joint tenants with full rights of survivorship." The parties do not dispute that the circuit court correctly identified the interests of the parties if indeed Bussa's and Mason's conveyances of the Fitzpatrick Trust's real property are set aside.

The circuit court concluded that given the existence of the survivorship rights resulting from the valid conveyances of the real property from the Bussa Trust, and the subject parcel's reliance on an easement for access to and from the nearest public road, which easement could not be further burdened, "partition in

kind would result in undue prejudice to the Plaintiffs and an equitable physical division of the Parcel cannot be achieved." Accordingly, the court ordered that the property be sold intact.

The circuit court further held that the parties, "[a]s cotenants and beneficiaries of Leo Bussa," were "jointly and equally responsible for the costs and attorney fees" associated with the earlier litigation concerning the easement, and also "for the real estate taxes and expenses associated with maintenance of the Property." The court set forth detailed findings and calculations, and concluded that plaintiffs were "entitled to $30,000.86 of Defendant's share from the sales proceeds of the Property." [*Schaaf I*, unpub op at 1-3.]

Defendant appealed as of right to this Court.

In a split, unpublished opinion this Court rejected defendant's claims of error related to the more than 300 pages of documentation but held that the trial court committed error requiring reversal when it concluded, as a matter of law, that a trust may not hold land as a joint tenant with rights of survivorship. Regarding defendant's jurisdictional challenge, we concluded that it was appropriate for the circuit court to make the initial determination on remand. Accordingly, we reversed in part, vacated in part, affirmed in part, and remanded the case to the circuit court for further proceedings. *Schaaf I*, unpub op at 3-7.

Plaintiffs sought leave to appeal in the Michigan Supreme Court, raising the sole question of whether a trust can own property as joint tenants with rights of survivorship. In lieu of granting leave, the Supreme Court vacated our judgment in *Schaaf I*, and remanded the case to this Court to consider in the first instance plaintiff's jurisdictional challenge before reaching the merits of the remaining legal issues. *Schaaf II*, ___ Mich at ___.

## II. JURISDICTION

Defendant contends on appeal that the circuit court exceeded its jurisdiction, and encroached on the exclusive jurisdiction of the probate court, when it voided the deeds executed by the Fitzgerald Trust's trustee and reallocated trust distributions in accord with its own interpretation of the terms of the trust. We disagree.

The existence of jurisdiction is a question of law that may be raised at any time and that this Court reviews de novo. *Adams v Adams*, 276 Mich App 704, 708-709; 742 NW2d 399 (2007). Because the jurisdiction of the probate court is entirely a matter of statute, the question of the scope of the probate court's exclusive jurisdiction is an issue of statutory interpretation, calling for review de novo. See *Thompson v Thompson*, 261 Mich App 353, 358; 683 NW2d 250 (2004).

"Jurisdiction of the subject matter is the right of the court to exercise judicial power over a class of cases, not the particular case before it; to exercise the abstract power to try a case of the kind or character of the one pending." *Altman v Nelson*, 197 Mich App 467, 472; 495 NW2d 826 (1992). "When a court is without jurisdiction of the subject matter, any action with respect to such a cause, other than to dismiss it, is absolutely void." *Fox v Bd of Regents*, 375 Mich 238, 242; 134 NW2d 146 (1965).

-4-

The circuit court is a court of general jurisdiction, which jurisdiction extends to "all civil claims and remedies except where exclusive jurisdiction is given in the constitution or by statute to some other court or where the circuit courts are denied jurisdiction by the constitution or statutes of this state." MCL 600.605. See also Const. 1963, art. 6, § 1. The Legislature exercised its prerogative to limit the jurisdiction of the circuit court when, in MCL 700.1302, it vested the probate court with "exclusive legal and equitable jurisdiction" over the following relevant matters:

(a) A matter that relates to the settlement of a deceased individual's estate, whether testate or intestate, who was at the time of death domiciled in the county or was at the time of death domiciled out of state leaving an estate within the county to be administered, including, but not limited to, all of the following proceedings:

(i) The internal affairs of the estate.

(ii) Estate administration, settlement, and distribution.

(iii) Declaration of rights that involve an estate, devisee, heir, or fiduciary.

(iv) Construction of a will.

(v) Determination of heirs.

(vi) Determination of death of an accident or disaster victim under section 1208.

(b) A proceeding that concerns the validity, internal affairs, or settlement of a trust; the administration, distribution, modification, reformation, or termination of a trust; or the declaration of rights that involve a trust, trustee, or trust beneficiary, including, but not limited to, proceedings to do all of the following:

(i) Appoint or remove a trustee.

(ii) Review the fees of a trustee.

(iii) Require, hear, and settle interim or final accounts.

(iv) Ascertain beneficiaries.

(v) Determine a question that arises in the administration or distribution of a trust, including a question of construction of a will or trust.

(vi) Instruct a trustee and determine relative to a trustee the existence or nonexistence of an immunity, power, privilege, duty, or right.

(vii) Release registration of a trust.

(viii) Determine an action or proceeding that involves settlement of an irrevocable trust.

In addition to the probate court's exclusive jurisdiction under MCL 700.1302, the probate court also has concurrent jurisdiction over certain matters concerning the estate of a decedent, protected individual, ward, or trust. These include concurrent jurisdiction to determine a property right or interest, to authorize partition of property, to hear and decide claims by or against a fiduciary or trustee for the return of property, and to hear and decide a contract proceeding or action by or against an estate, trust, or ward. MCL 700.1303.

Notably, by having set forth and retaining specific statutory authorization for the circuit court to hear and decide matters concerning rights to real property, the Legislature provided that its grant of exclusive jurisdiction to the probate court over the administration and distribution of trusts did not extend to plaintiffs' real property claims. See MCL 600.2932(1) (a person "who claims any right in, title to, equitable title to, interest in, or right to possession of land, may bring an action in the circuit courts against any other person who claims or might claim any interest inconsistent with the interest claimed by the plaintiff"); MCL 600.3301 ("Actions containing claims for the partition of lands may be brought in the circuit courts . . . . Such actions are equitable in nature.").

Further, the Legislature declined to grant the probate court exclusive jurisdiction over *every* cause of action that might incidentally touch on such issues as a settlor's intentions, but instead confined that grant of exclusive jurisdiction to "[a] *proceeding* that concerns the . . . distribution . . . of a trust; or the declaration of rights that involve a trust, trustee, or trust beneficiary . . . ." MCL 700.1302(b)(*vi*) (emphasis added). "[T]he meaning of the Legislature is to be found in the terms and arrangement of the statute without straining or refinement, and the expressions used are to be taken in their natural and ordinary sense." *Gross v Gen Motors Corp*, 448 Mich. 147, 160; 528 NW2d 707 (1995). The statutory reference to "a proceeding" that "concerns" trust matters suggests that the exclusive jurisdiction of the probate court under MCL 700.1302(b)(*vi*) covers not every issue that might arise from involvement of a trust, but rather to whole causes of action fundamentally arising from issues concerning the distribution of trusts, or the rights and duties of affected persons.

Here, plaintiffs did not ask the circuit court to construe, invalidate, or modify the Fitzpatrick Trust, or any other testamentary instrument, involved in the chain of title in the subject property. The parties brought to the circuit court disputes among living co-owners of real property over identification and resolution of their respective but overlapping interests, not issues concerning the distribution of, or rights under, the trusts that largely engendered those interests. Specifically, plaintiffs' complaint contained claims to determine interests in real property, for sale of the property, and for defendant's monetary contribution to the ownership responsibilities of the property. Defendant does not suggest that plaintiffs' claims for determining interests in real property, for sale of the property, and contribution were not actionable in the circuit court. Indeed, she could not validly make such a suggestion. Given the above, none of plaintiffs' claims fall within the exclusive jurisdiction of the probate court, and the circuit court thus did not err in exercising subject-matter jurisdiction in the present matter.

### III. TRUST AS JOINT TENANT WITH RIGHTS OF SURVIVORSHIP

Defendant next argues that a trust may hold property as a joint tenant in common with rights of survivorship and the trial court erred in finding otherwise and in thereafter voiding certain conveyances to the parties from the Fitzpatrick Trust. We disagree.

In Michigan, there are five common types of concurrent ownership that are recognized relative to the ownership of real property: tenancies in common, joint tenancies, joint tenancies with full rights of survivorship, tenancies by the entireties, and tenancies in partnership. *Wengel v Wengel*, 270 Mich App 86, 93; 714 NW2d 371 (2006). Although an ordinary joint tenancy may be destroyed by an act that severs the joint tenancy (such as a conveyance of interest by one of the joint tenants), no act of a co-tenant can defeat the other co-tenant's right of survivorship in a joint tenancy with rights of survivorship. *Townsend v Chase Manhattan Mortg Corp*, 254 Mich App 133, 136; 657 NW2d 741 (2002).

Relevant to the instant matter, MCL 554.44 states that all grants and devises of lands:

> made to 2 or more persons, except as provided in the following section, shall be construed to create estates in common, and not in joint tenancy, unless expressly declared to be in joint tenancy.

The above thus creates a presumption in favor of tenancies in common. Because estates in joint tenancy are not favored, all presumptions are against them. *Atha v Atha*, 303 Mich 611, 615; 6 NW2d 897 (1942).

In arguing that a trust may hold property as a joint tenant with rights of survivorship, defendant leans heavily upon the fact that the language used to convey the property interest to the trust specifically stated that the trust was to hold its property rights in that manner. However, simply saying something is intended or shall be does not necessarily make the intended act permissible or lawful. Common sense and relevant law establish that, contrary to defendant's position, a trust may not hold property as a joint tenant with rights or survivorship.

Under MCL 554.43, estates are divided into estates in severalty, in joint tenancy, and in common "the nature and properties of which respectively, shall continue to be such as are now established by law . . . ." Since the earliest recognition in Michigan of a joint tenancy with rights of survivorship in *Schulz v Brohl*, 116 Mich 603; 74 NW 1012 (1898), both this Court and our Supreme Court have consistently defined and applied the right of survivorship as it relates to the *life* and *death* of one joint tenant. "[T]he principal characteristic of the joint tenancy is the right of survivorship. Upon the death of one joint tenant, the surviving tenant or tenants take the whole estate." *Jackson v Estate of Green*, 484 Mich 209, 213; 771 NW2d 675 (2009). "A right of survivorship, which means that a surviving tenant takes ownership of the whole estate upon the death of the other joint tenant, does not exist in tenancies in common." *Wengel*, 270 Mich App at 94 & n 4. See also *Walters v Leech*, 279 Mich App 707, 711; 761 NW2d 143 (2008), citing 1 Cameron, Michigan Real Property Law (3d ed.), § 9.14, p. 328 (". . . at the heart of a tenancy by the entirety is the right of survivorship, meaning that when one party dies, the other party automatically owns the whole property.").

It has long been recognized that parties holding property as joint tenants with full rights of survivorship hold joint life estates with contingent remainders. *Albro v Allen,* 434 Mich. 271, 275; 454 NW2d 85 (1990). "Life estate" is defined as "[a]n estate held only for the duration of a specified person's life." *Black's Law Dictionary* (11 ed.). The key word in the definition is "life." The duration of a life estate is determined by a particular person's life and a trust, as an artificial entity, does not have a lifetime. With life comes the expectation of its antonym, death. "[T]he contingency is surviving the cotenants, and at the moment of death, the decedent's interest in the property passes to the survivor or survivors." *Albro*, 434 Mich at 274–275. A trust, however does not and cannot die. Rather, it terminates only through specifically required actions of a non-biological character. MCL 700.7410-MCL 700.7414.

Survivorship rights address the interests of natural persons, including the uncertainties normally attendant to natural persons' life spans. A trust, not being a natural person, has no actual residential needs, cannot occupy real property, and does not die. It is true that a trust cannot exist in perpetuity. A trust can, however, exist far beyond the lifespan of a natural person.[2] A trust holding property as a joint tenant with rights of survivorship thus potentially renders any such right of survivorship illusory.

MCL 565.48 provides further support for the premise that literal, physical death of a joint tenant is the key to the law's purpose in having created a joint tenancy with rights of survivorship. That statute provides:

> A register of deeds shall not record a deed or other instrument in writing that purports to convey an interest in land by the survivor or survivors under a deed to joint tenants or tenants by the entirety, unless, for each joint tenant or tenant by the entirety who is indicated in the deed or instrument to be deceased, a certified copy of the death certificate or other proof of death that is permitted by the laws of this state to be received for record by the register, is shown to have been recorded in the register's office by liber and page reference or is filed concurrently with the deed or other instrument and recorded as a separate document.

Because a trust does not die but instead terminates, MCL 554.44 leaves no room to conflate the definition of death beyond its practical meaning for purposes of joint tenancy with rights of survivorship. In short, we find that the trial court properly concluded that, as a matter of law, a trust may not hold real property as a joint tenant with rights of survivorship.

## IV. PARTITION

Defendant asserts that the trial court erred in finding that the property was not fairly capable of being partitioned in kind. We disagree.

---

[2] The dissent points out that at common law, a trustee may hold title as a joint tenant. While that may be true, a trustee is different than a trust itself. The powers of a trustee are thus irrelevant for our purposes today. Moreover, a trustee may be a trustee for a natural person.

In deciding whether or how to partition real property, a court exercises its equitable powers. See MCL 600.3301 ("Actions containing claims for the partition of lands . . . are equitable in nature."). When reviewing equitable matters, this Court reviews for clear error the findings of fact in support of the equitable decision rendered and reviews de novo the ultimate decision. *LaFond v Rumler*, 226 Mich App 447, 450; 574 NW2d 40 (1997).

Defendant asserts that, according to MCL 600.3304, "[a]ll persons holding lands as joint tenants or as tenants in common may have those lands partitioned," but that, according to MCL 600.3308, "a person who has only an estate in reversion or remainder in the lands may not maintain a claim for their partition." However, the limitation in MCL 600.3308 applies to persons having "*only* an estate in reversion or remainder" (emphasis added), and thus, does not apply to holders of current possessory rights, whether or not those holders of existing possessory rights also happen to hold rights of reversion or remainder.

Moreover, a court entertaining an action for partition is obliged to determine "whether the premises can be partitioned without great prejudice to the parties." MCR 3.401(A)(1). If the court determines that partition cannot be achieved "without undue prejudice to the owners, it may order the premises sold in lieu of partition . . . ." MCR 3.401(C). The trial court specifically and carefully considered whether partition could be achieved without undue prejudice to the owners. It concluded that given the existence of the survivorship rights resulting from the valid conveyances of the real property from the Bussa Trust, and the subject parcel's reliance on an easement for access to and from the nearest public road, which easement could not be further burdened, "partition in kind would result in undue prejudice to the Plaintiffs and an equitable physical division of the Parcel cannot be achieved."

We find no clear error in the trial court's determination regarding partition and prejudice to plaintiffs. Partition in kind of the subject parcel is not entirely practical in light of the attendant survivorship rights, and partition to the extent possible likely would engender further burdening of the use of Bussa Lane.

## V. DOCUMENTATION

Defendant asserts that the trial court's decision on plaintiffs' contribution claim was flawed because the court relied on 305 pages of documents that plaintiffs withheld from discovery then suddenly produced less than 24 hours before trial. We disagree.

This Court reviews the trial court's evidentiary rulings, including those concerning discovery, for an abuse of discretion. *Price v Long Realty, Inc*, 199 Mich App 461, 466; 502 NW2d 337 (1993); *Baker v Oakwood Hosp Corp*, 239 Mich App 461, 478; 608 NW2d 823 (2000). An abuse of discretion occurs when a trial court makes an error of law or its decision falls outside the range of principled outcomes. *Ronnisch Constr Group, Inc v Lofts on the Nine, LLC*, 499 Mich 544, 552; 886 NW2d 113 (2016).

We first note that defendant claims plaintiffs' late submission of the challenged documents occurred less than 24 hours before trial. However, the documents were submitted 24 hours prior to the date *originally scheduled for trial* on the issue of contribution. The matter did not actually

proceed to trial at that time given that the parties agreed to have the trial court decide the question of contribution on the basis of briefing to be completed several weeks later.

In ruling on defendant's motion to disallow the documentation, the trial court specifically considered, among other things, the fact that a decision concerning the contribution issue was still several weeks away. Defendant fails to meaningfully address the trial court's reasoned ruling or the fact that the trial court stated it would evaluate previously unidentified documents and thereafter issue decisions concerning admissibility on a document-by-document basis. Defendant has therefore abandoned this issue on appeal. *Thompson*, 261 Mich App at 356.

## VI. CONTRIBUTION

Defendant contends that the trial court erred in granting plaintiffs' claim for full share contribution from defendant for litigation that concluded in 2012 concerning the Bussa Lane easement. We disagree.

As noted, a court deciding whether or how to partition real property exercises its equitable powers. See MCL 600.3301. This includes its decisions concerning how to divide the proceeds of any sale to account for the equities of the situation. MCL 600.3336(2). "When partitioning the premises or dividing the money received from a sale of the premises among the parties the court may take into consideration the equities of the situation, such as the value of the use of the premises by a party or the benefits which a party has conferred upon the premises." MCL 600.3336(2).

"The general rule of contribution is that one who is compelled to pay or satisfy the whole or to bear more than his aliquot share of the common burden or obligation, upon which several persons are equally liable or which they are bound to discharge, is entitled to contribution against the others to obtain from them payment of their respective shares." *Caldwell v Fox*, 394 Mich 401, 417; 231 NW2d 46 (1975). "The doctrine of contribution between cotenants is based upon purely equitable considerations. It is premised upon the simple proposition that equality is equity. It is not, however, enforced unless reason and justice require that each of the cotenants contribute his proportionate share of the common burden." *Strohm v Koepke*, 352 Mich 659, 662; 90 NW2d 495 (1958). Such equitable relief should be granted at the court's discretion " 'according to the circumstances and exigencies of each particular case,' " as suggested by the evidence and guided by " 'the fixed principles and precedents of equity jurisprudence.' " *Youngs v West*, 317 Mich 538, 545; 27 NW2d 88 (1947), quoting 39 CJS, Equity, § 10, pp 328-329.

In this case, the trial court held that, "[a]s cotenants and beneficiaries of Leo Bussa, the Parties are jointly and equally responsible for the costs and attorney fees associated with Antrim County File No. 2011[-]008633[-]CH, and for the real estate taxes and expenses associated with maintenance of the Property," and thus that "Plaintiffs are entitled to contribution by the Defendant in this matter," including "for one-quarter of the costs and attorney fees" associated with the earlier litigation. While defendant contends that the prior litigation was elective and conferred no benefit on the property, she admits that she was among the parties who were substituted for Leo Bussa in the prior litigation upon his death and makes no claim that she did not agree with plaintiffs' position in the matter.

Moreover, defendant's assertion that MCL 600.3336(2) does not authorize a court "to consider a failed attempt to increase the property's value" has no merit. The ultimate merits or outcome of litigation bears no impact on the question of responsibility for maintaining it. And litigation intended to benefit an interest in real property does not necessarily cease to be beneficial, for purposes of determining responsibility for its costs, even if it is ultimately unsuccessful. As recognized by the trial court, the prior litigation was initiated to establish the scope of the easement and, ultimately, whether the scope of the easement prevented subdivision development of the property. The outcome of the prior easement litigation was necessary and relevant to each co-owner of the property such that the litigation was a common burden among them. Although the several easement litigants had substantial, if unequal, affected property interests, the presumption that "equality is equity" remains valid and defendant has failed to show that the trial court erred in ordering her to contribute equally to the expenses attendant to the earlier easement litigation.

Affirmed.

/s/ Deborah A. Servitto
/s/ Jonathan Tukel